
876 P.2d 587

STATE of Idaho, Plaintiff–Respondent,

v.

Chester Leroy POWELL,
Defendant–Appellant.

No. 20274.

Supreme Court of Idaho,
Coeur d'Alene, April 1994 Term.

June 21, 1994.

Daniel P. Featherston, Sandpoint, for appellant.

Larry EchoHawk, Atty. Gen., Thomas P. Watkins, Deputy Atty. Gen. (argued), Boise, for respondent.

JOHNSON, Justice.

This is a criminal case. The only issue presented is whether the trial court abused its discretion in denying defendant's motion for a new trial based on newly discovered evidence. We conclude that the trial court did not abuse its discretion.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

The state charged Chester Leroy Powell with the first-degree murder of Carl Prebor. After a trial, the jury convicted Powell of second-degree murder.

Several days after the jury verdict, a member of the jury (the juror) contacted a local magistrate judge and informed the magistrate judge that during Powell's testimony at trial the juror realized for the first time that the juror might have heard the shots that killed Prebor. The magistrate judge referred the juror to the district judge who had presided at Powell's trial. The juror testified in a deposition about the juror's knowledge of the circumstances. Powell then moved for a new trial on the basis of newly discovered evidence, summarizing the juror's testimony, as follows:

> [O]n November 20, 1991, the date of the homicide, that [the juror] was hunting across the valley and heard five (5) shots. [The juror] heard the shots between 10:00 a.m. and 11:00 a.m. The timing of the shots was:
>
> Shot one, sometime between 10:00 and 11:00 a.m.;
>
> Shot two, four (4) to five (5) seconds after the first shot;
>
> Shot three, eight (8) to ten (10) seconds after the second shot;

Shot four, eight (8) to ten (10) seconds after the third shot;

The final shot, twenty (20) seconds after the fourth shot.

[The juror] testified at his deposition that he did not recognize the significance of those shots until Mr. Powell was testifying at the trial, which testimony was the last day of trial. However, [the juror] remembers prior to trial reading the newspaper about the shooting and thinking that it was more in the orchard area, an area south of Naples, Idaho, and it was only at trial, and specifically not until the testimony of the Defendant, that he realized that these shots might have been the shots that killed Mr. Prebor. [The juror] stated that when he began to realize this, he did not know what he should do, except he felt bound by the Court's instruction to disregard this information in his deliberation as a juror, and base his decision only on the evidence presented at the trial. In his interview with [the magistrate judge], [the juror] stated he had felt pressured by other jurors into participating in the vote of guilty.

[The juror's] memory is very clear that the date of the shots was November 20, 1991, the time between 10:00 and 11:00 a.m., the location was from the immediate vicinity of the Prebor property. The clear testimony of the State's witness at trial was that from 8:15/9:00 a.m. until 12:22 [p.m.], the Defendant was not at the Prebor property, but was at [the place where he sold a generator he had taken from the Prebor property] and at [a bank in Bonners Ferry], which is several miles north and east of the Prebor property and the location where [the juror] was hunting on the date in question.

The trial court ordered the deposition testimony of the juror transcribed, and, following a hearing on the motion for new trial, issued an opinion and order denying the motion. In this opinion, the trial court considered the test adopted by this Court in *State v. Drapeau*, 97 Idaho 685, 691, 551 P.2d 972, 978 (1976). In discussing the materiality of the new evidence, the trial court concluded that while the evidence would be material on the issue of whether Powell was on the Prebor property when the killing shots occurred, "[i]t would not be conclusive."

In addressing the requirement that for a new trial to be warranted, it would have to conclude that the newly discovered evidence would probably produce an acquittal in a new trial, the trial court said:

As indicated above, [the juror's] testimony is not conclusive. It merely establishes that around 11:00 o'clock a.m. on November 20, 1991, [the juror] heard five gunshots from the area where Prebor lived. While the evidence would support Powell's testimony of what happened, I am not persuaded that it would overcome his two separate jailhouse confessions. Particularly as the confessions contained details which at the time were known only to the pathologists at the autopsy, the coroner, the prosecuting attorney, and three investigators present at the autopsy, and the murderer. Among such details were the number and placement of the shots which hit and killed Prebor. While there is a possibility that [the juror's] testimony might cause a jury in a new trial to acquit Powell, my review of the evidence causes me to believe it is only a possibility and not a probability. [The juror's] testimony does not satisfy the third *Drapeau* test.

## II.

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING A NEW TRIAL.

■ Powell asserts that the trial court abused its discretion in denying a new trial. Specifically, Powell asserts that the trial court:

1. incorrectly stated the facts to which the parties agreed, and by doing so devalued the importance of the juror's testimony;

2. by using the standard of "conclusive evidence," instead of the lower standard of evidence sufficient to raise a reasonable doubt, followed an incorrect standard in evaluating the strength of evidence required to meet the criteria of "probably resulting in an acquittal;"

3. by using the standard of "conclusive evidence" effectively placed on Powell the burden of proving himself guilty beyond a reasonable doubt;

4. disregarded the unrebutted testimony of the juror, who testified that had he been permitted under the instruction of the trial court to consider the information he had, he would have refused to join in the guilty verdict.

We conclude that the trial court did not abuse its discretion in denying the motion for new trial.

Recently, in *State v. Dambrell*, 120 Idaho 532, 817 P.2d 646 (1991), the Court restated the standard by which we review a trial court's decision to deny a new trial: "Whether to grant or deny a new trial is a discretionary matter for the trial court, and we will review the trial court's decision only to determine if it has abused its discretion." *Id.* at 543, 817 P.2d at 657.

■ In determining whether the trial court abused its discretion we employ the three-step inquiry the Court adopted in *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). In doing so, we inquire whether the trial court:

(1) correctly perceived the issue as one involving the exercise of discretion,

(2) acted within the outer boundaries of its discretion and consistently with any legal standards applicable to specific choices it had, and

(3) reached its decision by an exercise of reason.

First, we address Powell's contention that the trial court incorrectly stated the facts to which the parties agreed, and by doing so devalued the importance of the juror's testimony. Powell challenges a statement the trial court made in its discussion of the materiality of the juror's testimony. The trial court stated: "The parties have agreed that Prebor was killed during the deer hunting season and that there are large numbers of both deer and hunters in the Ruby Creek and Deep Creek drainages." The state agrees that the trial court incorrectly recited the facts to which this statement refers. The actual terms of the stipulation were that

"there is good deer hunting north of Coeur d'Alene."

We first note that this incorrect statement of the agreed facts was made by the trial court in ruling that the juror's testimony was material. Therefore, it obviously did not affect the trial court's analysis of this portion of the *Drapeau* test.

Powell contends, however, that the statement he says was incorrect caused the trial court not to give full value to the juror's testimony in evaluating whether the new evidence would probably produce an acquittal. In reaching its conclusion on this aspect of the *Drapeau* analysis, the trial court did not reject the juror's testimony or devalue it, but merely weighed it against the evidence presented at trial to determine whether the juror's testimony would probably produce an acquittal in a new trial. There is no indication that the trial court devalued the juror's testimony.

We also reject Powell's contention that the trial court required Powell to establish by "conclusive evidence" that the juror's testimony would result in an acquittal at a new trial. Although the trial court stated in its analysis concerning materiality that the juror's testimony was not conclusive, this did not reflect a conclusion by the trial court that the testimony was not material. When the trial court stated in the portion of its analysis concerning whether the new evidence would probably produce an acquittal in a new trial that the juror's testimony "is not conclusive," this did not indicate that the trial court imposed a different standard than *Drapeau* requires. In making this statement, the trial court only acknowledged that it was necessary to consider the juror's testimony in light of the evidence presented at trial to determine whether the juror's testimony would probably produce an acquittal in a new trial. The trial court concluded it would not.

The juror testified that he would have refused to join the guilty verdict, if the trial court had not instructed the jury not to consider any personal knowledge about the case they might have. Powell contends that the trial court should not have disregarded this testimony. We conclude that this has

nothing to do with the trial court's determination whether the new evidence would probably produce an acquittal in a new trial. This determination is for the trial court, not for a juror, even in these unique circumstances. The trial court's denial of a new trial was within the discretion of the trial court to make. Employing the three-step inquiry directed by *State v. Hedger*, we conclude that the trial court did not abuse its discretion in denying the motion for new trial.

## III.

### CONCLUSION.

We affirm the trial court's denial of the motion for new trial.

McDEVITT, C.J., and BISTLINE, TROUT and SILAK, JJ., concur.