IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 45164

| | |
|---|---|
| STATE OF IDAHO, | ) 2018 Unpublished Opinion No. 443 |
| | ) |
| Plaintiff-Respondent, | ) Filed: May 7, 2018 |
| | ) |
| v. | ) Karel A. Lehrman, Clerk |
| | ) |
| TABITHA BRIANA MARTIN, | ) THIS IS AN UNPUBLISHED |
| | ) OPINION AND SHALL NOT |
| Defendant-Appellant. | ) BE CITED AS AUTHORITY |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. George D. Carey, District Judge.

Order withholding judgment and order of probation, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jeff Nye, Deputy Attorney General, Boise, for respondent.

GRATTON, Chief Judge

Tabitha Briana Martin appeals from the district court's order withholding judgment and order of probation entered upon a jury finding her guilty of felony domestic violence in the presence of a child, Idaho Code §§ 18-918(2), (4), and 18-903(a). Martin asserts the district court erred when it overruled her relevancy objection and allowed her daughter to testify about the timing of a conversation they had with each other regarding Martin getting treatment for drinking.

I.

FACTUAL AND PROCEDURAL BACKGROUND

This case stems from the events that took place in September 2016. At that time Martin was married to David. Together they had an eighteen-month-old son and shared a home in Boise. Martin also had two children from a prior marriage, and one of those adult children, Martin's daughter (Daughter), lived at their home. On September 29, 2016, Martin and David

1

were scheduled to leave for a trip to McCall. Their departure was delayed because David had to report for jury duty that morning. When David returned home, he put their son down for a nap and they were going to leave after he awoke.

Martin testified that she drank a six-pack of beer over the course of several hours while preparing for the trip. Daughter asked David for money for groceries and he gave her the cash he had in his wallet, which amounted to eight dollars. Thereafter, Martin became angry and she and David had a heated argument. David recorded parts of the subsequent altercation on his cell phone, and the court allowed eight clips of video to be admitted into evidence. When their son woke up from his nap David carried him out to the area of the home where the couple was arguing. The video footage shows Martin yelling derogatory comments and offensive name-calling. It also reveals the altercation became physical; Martin can be seen closing a cabinet causing its door to hit David's face and David yelling in disbelief. Martin later testified that while she was terribly embarrassed by her behavior, she did not intend to hurt David and closed the cabinet door reflexively when he opened it. David testified that in addition to having the cabinet door hit his face, Martin slammed his arm in the cabinet three times, clawed his face two times, and pushed him. David also recorded his injuries by video.

The police arrived at their home in response to a 911 call from David. The officers testified that Martin was intoxicated. After the police finished their questioning and documented David's injuries, Martin was arrested. Because the couple's young son was present, the State charged Martin with felony domestic violence in the presence of a child. She entered a plea of not guilty and the case proceeded to a jury trial. During the trial, Daughter testified, over Martin's objection, about a conversation between Daughter and Martin regarding Martin getting treatment for drinking. The jury found Martin guilty and the district court withheld judgment and placed her on probation for five years. Martin timely appeals.

## II.

## ANALYSIS

Martin requests this Court vacate the order withholding judgment and order of probation and remand for a new trial based on her assertion that the court erred by allowing Daughter to testify about the timing of a conversation between her and Martin. Martin asserts that conversation is not relevant and is prejudicial. Evidence that is relevant to a material and disputed issue concerning the crime charged is generally admissible. *State v. Stevens*, 146 Idaho

2

139, 143, 191 P.3d 217, 221 (2008). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401; *Stevens*, 146 Idaho at 143, 191 P.3d at 221. Whether a fact is of consequence or material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010). We review questions of relevance de novo. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993); *State v. Aguilar*, 154 Idaho 201, 203, 296 P.3d 407, 409 (Ct. App. 2012).

Error is not reversible unless it is prejudicial. *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct. App. 1983). With limited exceptions, even constitutional error is not necessarily prejudicial error. *Id.* Thus, we examine whether the alleged error complained of in the present case was harmless. *See State v. Lopez*, 141 Idaho 575, 578, 114 P.3d 133, 136 (Ct. App. 2005).

Martin contends the testimony of her daughter regarding the conversation about the possibility of Martin seeking treatment for drinking was not relevant and the error in allowing it was not harmless. The following is a segment of Daughter's testimony:

| | |
|---|---|
| Prosecutor: | Do you know if she had started to drink again in the months leading up to September the 29th? |
| Daughter: | I think it was within that month, I'm pretty sure before that it had been three years since she had had any alcohol. |
| Prosecutor: | So she enjoyed a pretty significant period of sobriety? |
| Daughter: | Yes. |
| Prosecutor: | And then within about a month are you saying that July and September or just within September? |
| Daughter: | I believe it was only September, but I'm not really sure because I was nowhere that she had been drinking the day of the incident until later I guess. |
| Prosecutor: | Okay. So in that month when she had started drinking again, could you tell a difference in her behavior versus the times that she was sober? |
| Daughter: | Yes, just because I know what she's like when she is drunk. So it's kind of easy for me to tell. |
| Prosecutor: | How is she like when she's drunk? |
| Daughter: | She just seems easy to upset and just kind of irrational. And I just think, yeah, that's basically--I mean, she's just kind of hard to talk to, she doesn't really--it's difficult to get through to her if you're trying to speak to her. |
| Prosecutor: | When she's under the influence? |

3

| Daughter: | Yes. |
|---|---|
| Prosecutor: | When she's drinking but she's sober is she kind of back to her normal mom for you? |
| Daughter: | Could you repeat that? |
| Prosecutor: | During this time that she was drinking in the times that she was sober during that month, was she kind of more normal mom or was she still as irrational? |
| Daughter: | Just normal. I think the drinking is the main contributor to that behavior. |
| Prosecutor: | Had you had any conversations with her about how her behavior differed when she [was] drinking versus when she was sober? |
| Daughter: | Not that I can remember. |
| Prosecutor: | Did you ever talk to her about maybe getting treatment or classes or rehabilitation? |
| Daughter: | I'm pretty sure I mentioned that at some point. |
| Prosecutor: | Did she seem receptive to that to you, like she wanted to get help? |
| Daughter: | I don't think she believed that she needed it. |

Daughter's testimony also included whether David drank regularly, the family's living arrangements, and then back to the day in question. The prosecutor asked about the timing of Daughter's conversation with Martin regarding getting treatment and Martin objected on the grounds of relevancy. The court noted that Martin's drinking was an issue that had been raised by both parties in their opening statements and the court would allow the prosecution to go a little further with its line of questioning; this is the focus of the evidentiary issue on appeal:

| Prosecutor: | So as I understand you were saying it was a previous time that you had talked with her about getting some help? |
|---|---|
| Daughter: | Yes. She's had issues in the past with drinking, and I believe it was then that I had suggested that she address that issue. |

Martin asserts the timing of the prior conversation is not relevant because it does make it any more or less likely that the elements of domestic violence in the presence of a child occurred. She also notes that while both parties brought up the issue of drinking in their opening statements, she only mentioned it as a circumstance of the day in question, as opposed to any prior occasion. Further, she asserts that any reference to her drinking in the opening statement does not make Daughter's testimony on the timing of their prior conversation relevant. Conversely, the State contends the testimony is relevant given that its legal theory was Martin was intoxicated and irrational, and became angry after David gave Daughter money. The State used Daughter's testimony to demonstrate that she could infer Martin was drunk based on her familiarity with the way Martin acts when she is intoxicated, specifically that she becomes easily upset and irrational. The State claims that the conversation of Martin seeking treatment for

4

drinking prior to the incident is relevant because it corroborates that she is familiar with Martin's drinking prior to the incident; and therefore, she could infer Martin was intoxicated on the day in question. The State also dismisses Martin's claim that the evidence is not relevant because it does not make it any more or less likely that the elements of the crime occurred. The State maintains relevance is not determined strictly by the elements of a crime. In *State v. Yakovac*, 145 Idaho 437, 446, 180 P.3d 476, 485 (2008), the Court affirmed the allowance of testimony referencing outstanding warrants even though the warrants were not relevant to the current charge itself, but rather to explain the police officers' actions.

We agree the conversation at issue supports the State's legal theory that Martin's intoxication caused her to be irrational and overreact to David. Therefore, the district court did not err in its evidentiary ruling, and even if it had, any error was harmless.

First, the testimony as to timing is not damaging. Instead, it relates the conversation to a time before Martin's laudable three years of sobriety. Second, the court gave a limiting instruction and Martin does not contend it was inadequate. Third, evidence of Martin's guilt was overwhelming. The video footage was particularly damaging. The clips show parts of the altercation including Martin yelling in a hostile way, Martin causing a cabinet door to hit David's head, their son sitting on the floor of the room while they argued, and David's injuries. Further, while the video does not show Martin actually pushing David, it does show David holding their son in his arms and asking Martin to push him "again." The video footage corroborates not only David's version of events, but also Daughter's testimony that her mother told her that David had a black eye after the incident because she closed the cabinet on his face and also generally regarding her mother's behavior while intoxicated.

Moreover, there are several discrepancies with Martin's testimony at trial, prior statements she made, and evidence presented at trial. Martin stated that she told one of the responding officers that David had hit her in the head with a cabinet door prior to the videos being recorded but the video does not show any injuries to her head. She testified she had been drinking but denied being drunk in the videos. Martin acknowledged she told the officer she could not feel the injury she alleged was caused by David because she was numb from intoxication. Martin testified that she told one of the officers that David was antagonizing her by repeatedly opening cabinet drawers; however, the officers testified that she did not tell them David had done this. One of the officers testified that when he arrived Martin initially told him

5

she was unaware as to how David was injured; however, after he indicated he had seen the videos, she stated that if she had injured him it was unintentional or that she didn't remember doing so.

Based on the evidence presented, we are convinced beyond a reasonable doubt that any reference in Daughter's testimony about the timing of the conversation she had with Martin did not contribute to the verdict. Based upon the video clips, the testimony of David and the officers, and David's documented injuries, the jury was presented with convincing evidence that the elements of felony domestic violence in the presence of a child existed. Thus, it follows that Daughter's testimony in regard to the timing of the conversation she had with Martin would have little to no effect. The district court did not err by admitting her testimony, and even if it had, any error was harmless.

## III.
## CONCLUSION

The district court did not err in allowing Daughter's testimony. The order withholding judgment and order of probation are affirmed.

Judge GUTIERREZ and Judge HUSKEY **CONCUR**.