**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 35845**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2010 Opinion No. 44** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: June 14, 2010** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| DEAN CLAY MILLER, JR., | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. David C. Nye, District Judge.

Judgment of conviction and sentence for possession of a controlled substance, <u>affirmed</u>; judgment of conviction and sentences for burglary and assault with intent to commit a serious felony, both enhanced for being a persistent violator, <u>affirmed</u> <u>in</u> <u>part</u> <u>and</u> <u>modified</u> <u>in</u> <u>part</u>.

Molly J. Huskey, State Appellate Public Defender; Heather M. Carlson, Deputy Appellate Public Defender, Boise, for appellant. Heather M. Carlson argued.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent. Mark W. Olson argued.

_____

MELANSON, Judge

Dean Clay Miller, Jr. appeals from his judgment of conviction and sentences for possession of a controlled substance, burglary, and assault with intent to commit a serious felony, as well as enhancements for being a persistent violator. For the reasons set forth below, we affirm in part and modify in part.

**I.**

**FACTS AND PROCEDURE**

Under the influence of methamphetamine in the middle of the night, Miller believed (according to his account of the events) that he was being chased by people who were trying to harm him. Miller entered a home wearing a mask and gloves and awoke a husband and wife in their bed while brandishing a shotgun that he had found in the house. The couple's young

1

children were also in the house. Miller questioned the couple concerning their employment and finances and told them that he planned to wait until morning and would then force them to withdraw money from their accounts. At one point, Miller became distracted and the husband was able to sufficiently overpower him so as to allow his wife to escape with one of their children. Miller fled to the garage, and the husband left the home with his remaining children. A neighbor arrived with a pistol to assist the victims. After a brief standoff, Miller put the shotgun down. However, when police arrived, Miller had barricaded himself in the garage and was holding a knife to his neck and threatening suicide. Miller was eventually subdued and arrested.

Miller was charged with possession of a controlled substance, I.C. § 37-2732(1); burglary, I.C. §§ 18-1401 and 18-1403; first degree kidnapping, I.C. § 18-4502; and assault with intent to commit a serious felony, I.C. § 18-909; and the state sought a sentence enhancement for use of a firearm during the commission of a felony, I.C. § 19-2520. Later, the state filed a notice that it would also seek a persistent violator enhancement pursuant to I.C. § 19-2514. The district court granted the state's motion to amend the information to reflect the persistent violator enhancement, although no amended information was ever filed. Miller pled guilty to possession of a controlled substance, burglary, and assault with intent to commit robbery. Miller also admitted to being a persistent violator. The state dismissed the remaining charges. The district court sentenced Miller to a determinate term of seven years for possession of a controlled substance. The district court also sentenced Miller to unified terms of life imprisonment, with minimum periods of confinement of twenty-eight years, for burglary and assault with intent to commit robbery, which were both enhanced pursuant to the persistent violator statute. The district court ordered Miller's sentences to run concurrently. Miller appeals.

## II.

## ANALYSIS

### A.    Jurisdiction

Miller argues, for the first time on appeal, that the district court lacked subject matter jurisdiction to impose the persistent violator enhancements. Whether a court lacks jurisdiction is a question of law, over which this Court exercises free review. *State v. Jones,* 140 Idaho 755, 757, 101 P.3d 699, 701 (2004). In a criminal case, the filing of an information alleging that an offense was committed within the State of Idaho confers subject matter jurisdiction. *Id.* at 757-

2

58, 101 P.3d at 701-02. Because the information provides subject matter jurisdiction to the district court, the district court's jurisdictional power depends on the charging document being legally sufficient to survive challenge. *Id.* at 758, 101 P.3d at 702. Whether a charging document conforms to the requirements of law and is legally sufficient is also a question of law subject to free review. *Id.*

A challenge asserting the charging information is jurisdictionally deficient is never waived and may be raised at any time, including for the first time on appeal. *Id.* at 758, 101 P.3d at 702. However, a violation of due process can be waived if not presented below. I.C.R. 12(b)(2); *Jones*, 140 Idaho at 758, 101 P.3d at 702. When the information's jurisdictional sufficiency is challenged after trial, it will be upheld unless it is so defective that it does not, by any fair or reasonable construction, charge the offense for which the defendant was convicted. *Jones,* 140 Idaho at 759, 101 P.3d at 703; *State v. Robran,* 119 Idaho 285, 287, 805 P.2d 491, 493 (Ct. App. 1991). A reviewing court has considerable leeway to imply the necessary allegations from the language of the information. *Jones,* 140 Idaho at 759, 101 P.3d at 703; *Robran,* 119 Idaho at 287, 805 P.2d at 493. In short, when considering a post-trial challenge to the jurisdictional sufficiency of the information, a reviewing court need only determine that, at a minimum, the information contains a statement of the territorial jurisdiction of the court below and a citation to the applicable section of the Idaho Code. *State v. Quintero,* 141 Idaho 619, 622, 115 P.3d 710, 713 (2005).

In this case, Miller argues that the district court did not have jurisdiction to impose the enhancements because they were not included in the original or amended information. Miller points out that the state failed to make a formal motion to amend the information, even though the district court entered an order granting the state's motion. While subject matter jurisdiction and the Idaho Constitution require offenses to be alleged in a charging document, I.C. § 19-2514 does not create or define a new or independent crime. *See State v. Lopez*, 107 Idaho 826, 828, 693 P.2d 472, 474 (Ct. App. 1984). Rather, it renders a person convicted liable to punishment in excess of that which might have been otherwise imposed. *State v. Johnson*, 86 Idaho 51, 57, 383 P.2d 326, 329 (1963). Thus, the issue is not one of jurisdiction, but whether Miller was afforded due process through proper notice of the state's intent to seek the enhanced penalties. A brief review of the record reveals that Miller had more than adequate notice of the state's intent to seek the persistent violator enhancements, including, among other things, Miller's decision to

3

admit to being a persistent violator as part of his plea agreement. Therefore, the district court had subject matter jurisdiction to sentence Miller as a persistent violator, and Miller's due process rights were not violated for lack of notice.

**B.      Excessive Sentences**

Miller next argues that his sentences are excessive. An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Jackson*, 130 Idaho 293, 294, 939 P.2d 1372, 1373 (1997); *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

This Court has held that the criteria of retribution and deterrence bear directly on the minimum period of confinement, which is the judicially-determined "price" of the crime. *State v. Gauna*, 117 Idaho 83, 89, 785 P.2d 647, 653 (Ct App. 1989). The minimum period also carries implications for rehabilitation and the protection of society because it establishes a prospective time frame for institutional correction programs and for evaluation of the prisoner's eventual suitability for parole. *State v. Sanchez,* 115 Idaho at 776, 777-78, 769 P.2d 1148, 1149-50 (Ct. App. 1989).

As the foregoing statement of our standard of review discloses, there are no definitive parameters to be applied by an appellate court in evaluating a criminal defendant's claim that his or her sentence is excessive, and our review entails great deference to the decision of the sentencing court. Nevertheless, sentence reviews have long been conducted by the Idaho

4

appellate courts, and it is a responsibility with which we are charged. *See State v. Adams*, 99 Idaho 75, 76-79, 577 P.2d 1123, 1124-27 (1978) (Bistline, J. dissenting) (discussion of the history of appellate review of sentences in this state). While the task is not an easy or well-defined one, it nevertheless has significant purposes. The Idaho Supreme Court has described the general objectives of appellate sentence review as:

> (i)   to correct the sentence which is excessive in length, having regard to the nature of the offense, the character of the offender, and the protection of the public interest;
> (ii)   to facilitate the rehabilitation of the offender by affording him an opportunity to assert grievances he may have regarding his sentence;
> (iii)   to promote respect for law by correcting abuses of the sentencing power and by increasing the fairness of the sentencing process; and
> (iv)   to promote the development and application of criteria for sentencing which are both rational and just.

*See Brown*, 121 Idaho at 393, 825 P.2d at 490; *State v. Wolfe*, 99 Idaho 382, 384, 582 P.2d 728, 730 (1978). With these purposes in mind, we consider Miller's contention that his sentences are unduly severe.

We first address Miller's argument that his sentence for possession of a controlled substance is excessive. Having reviewed the record, we conclude that the district court did not abuse its discretion by sentencing Miller to a determinate term of seven years for possession of a controlled substance.

We next consider Miller's argument that his sentences for burglary and assault with intent to commit a serious felony, enhanced for being a persistent violator, are excessive. The district court imposed concurrent sentences of unified terms of life imprisonment, with minimum periods of confinement of twenty-eight years for these crimes. We acknowledge that Miller has committed very serious crimes warranting substantial punishment. We also note, however, that the minimum terms of Miller's sentences are nearly three times the statutory maximum term that would be allowed for burglary and nearly twice the maximum term that would be allowed for assault with intent to commit a serious felony[1] but for the persistent violator enhancements, which authorized sentences of up to life imprisonment.

---

[1]   The maximum term of imprisonment for burglary is ten years, I.C. § 18-1403, and the maximum sentence for assault with intent to commit a serious felony is fifteen years, I.C. § 18-910.

When the instant crimes were committed, Miller was forty years old. His record includes a number of misdemeanor convictions, including encouraging the delinquency of a minor, disturbing the peace, drug and paraphernalia possession, driving without privileges, willful concealment, failure to purchase a driver's license, and driving under the influence. Miller's only prior felony convictions were for two burglaries, for which he was placed on probation. Similar to this case, Miller's two burglaries were also accompanied by extensive methamphetamine use and mental instability. Miller broke into two unoccupied homes belonging to family and friends. Miller was arrested for the burglaries after he was found in a cemetery threatening suicide with a gun. Other than his threat of suicide, none of Miller's prior offenses involved violence or threat of serious bodily harm to others. Although these two prior felonies are sufficient to render Miller subject to persistent violator sentence enhancements for his current offenses, they were not violent nor exceptionally egregious and do not appear to justify enhancements in this case that multiply Miller's determinate terms nearly two to three times beyond what would otherwise be the maximum allowed by law.

In pronouncing Miller's sentences, the district court referred to the need to protect society. The district court expressed its view that, even if Miller's behavior was influenced by illegal drugs, it was Miller's choice to consume methamphetamine. The district court also acknowledged that Miller had been diagnosed as bipolar, but concluded that was not an excuse for his crimes.

The district court was obviously correct in stating that addiction does not excuse the crimes committed while a person is under the influence of drugs. It is, however, a factor which should be considered at sentencing. *Nice*, 103 Idaho at 90, 645 P.2d at 325. Similarly, mental illness is not a defense, but at sentencing, if the defendant's mental condition is a significant issue, the trial court is required to consider certain factors, including, among other things, the extent of the illness and the prognosis for improvement or rehabilitation. I.C. § 19-2523(1); *State v. Strand*, 137 Idaho 457, 461, 50 P.3d 472, 476 (2002).

The district court here interpreted a psychological evaluation report as saying that Miller had "no need for mental health treatment so long as Mr. Miller avoids substance abuse" and that it was "Miller's choices to abuse illegal substances that have compounded his mood and personality disorder, and not his mood and personality disorder that has caused him to abuse illegal substances." Although we agree with the district court's assertion that neither Miller's

6

mental illness nor his drug addiction is an excuse for or defense to the criminal charges, we conclude that the district court significantly misinterpreted the mental health evaluation, which stated that Miller had a history of symptoms and present symptoms indicative of "a reliably diagnosable mood and personality disorder," the severity of which was in question due to Miller's "pattern of symptom exaggeration" and "due to the compounding effects of his persistent substance abuse." The evaluator stated that "the immediate prognosis without treatment is that he would likely have a rapid return to substance abuse to escape distress," which would then lead to further deterioration. And while the evaluator himself did not recommend a specific type of treatment, he said: "It is likely that Miller will benefit from pharmacotherapy during his incarceration. He has the ability to engage with a prescribing practitioner to discuss his need for psychotropic medications."

In our view, the court unduly discounted as sentencing considerations, the effect of Miller's mental illness and longstanding substance addiction and his rehabilitation potential. Miller had a long history of mental illness and substance addiction. He reports that he began hearing voices when he was five years old and was introduced to illegal drugs when he was thirteen or fourteen. He was hospitalized in a psychiatric facility for the first time at age seventeen and was then placed on psychotropic medication for the first time. He had been hospitalized several times due to suicidal behavior and noncompliance with psychotropic treatment. Except for the two-month period of hospitalization as a teenager, he had never been in in-patient substance abuse treatment. In recent years, methamphetamine was his drug of choice, and he reported becoming paranoid and suicidal when using methamphetamine. In a period beginning approximately four years before his present offenses, Miller participated in a dual diagnosis program (for persons who have both mental health and addiction problems) with the Idaho Department of Health and Welfare. In September 2005, he was placed on probation for the prior burglary offenses and for an extended period appeared to do well under probation supervision. He was employed, resided with his parents, and gained custody of his young son. For a period of one year, he was taken off the medications and showed no acute symptoms. Miller claimed to have had two years of sobriety before the relapse that led to his current offenses. This relapse occurred after, with his doctor's approval, he was removed from his medications because he found it difficult to work while taking the medications. At the time of sentencing, he had been medicated while in jail for about a year and demonstrated no behavioral

7

problems. This history indicates that Miller suffers from significant mental illness and a long history of substance addiction, but that he can and does benefit from treatment. His history of abstinence and good behavior for a long period while he was on probation precludes any conclusion that he is a "hopeless case" beyond any hope of rehabilitation.

We agree with the district court's concern for the protection of society. Miller put the victims in this case through severe trauma, and this is an appropriate case to impose a sentence for the purpose of retribution. However, Miller's sentences should not impose confinement for a period vastly longer than necessary to achieve retribution and the other sentencing goals articulated in *Toohill* and *Sanchez*. *See Jackson*, 130 Idaho at 296, 939 P.2d at 1375; *Gauna*, 117 Idaho at 89, 785 P.2d at 653. The sentences should not dismiss all possibility of Miller's rehabilitation, including the possibility of improvements in the treatment of addiction and mental illness which may occur while he is in prison. Here, the facts disclose a history of misdemeanor offenses and two burglaries, but no history of violence. In our view, taking into account all of the facts of the case, a minimum period of confinement exceeding fifteen years is unreasonable. Fifteen-year fixed terms will not only exact a high price for the crimes committed, but also provide for adequate time for whatever institutional correction programs are available for Miller's treatment and rehabilitation. Even after completing his minimum periods of confinement, Miller will not be assured of parole. The Commission of Pardons and Parole may grant parole only when the commission believes that it is in the best interests of society and it is satisfied that Miller will live as a law-abiding citizen. *See* I.C. § 20-223(c). We therefore modify Miller's sentences for burglary and assault with intent to commit a serious felony to unified terms of life imprisonment, with minimum periods of confinement of fifteen years.

## III.

## CONCLUSION

The district court had subject matter jurisdiction to impose the persistent violator sentencing enhancements. The district court did not abuse its discretion by sentencing Miller to a determinate term of seven years for possession of a controlled substance. The district court did abuse its discretion, however, by imposing excessive sentences for burglary and assault with intent to commit a serious felony, with enhancements for being a persistent violator. Miller's sentences for burglary and assault with intent to commit a serious felony, inclusive of the persistent violator enhancements, are hereby modified to unified terms of life imprisonment, with

8

minimum periods of confinement of fifteen years. Miller's sentences are to run concurrently. Miller's judgment of conviction is otherwise affirmed as modified. The district court is hereby directed to enter an amended judgment of conviction consistent with this opinion.

Chief Judge LANSING, **CONCURS.**

Judge GRATTON, **CONCURRING IN PART AND DISSENTING IN PART**.

I concur in part II.A., and respectfully dissent in part II.B., of the majority opinion.

I begin by restating the standards of review, since, in my view, the majority, while criticizing the district court for too narrowly considering one sentencing objective, itself does the same. An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable *upon the facts of the case*. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). Upon review of a sentence the issue is not whether the sentence is one that this Court would have imposed, but whether the sentence is plainly excessive under any reasonable view *of the facts*. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). In deference to the trial judge, this Court will not substitute its view of a reasonable sentence where reasonable minds might differ. *State v. Stevens*, 146 Idaho 139, 148-49, 191 P.3d 217, 226-27 (2008).

In examining the reasonableness of a sentence, the Court conducts an independent review of the entire record available to the trial court at sentencing, focusing on the objectives of criminal punishment: (1) protection of society; (2) deterrence of the individual and the public; (3) possibility of rehabilitation; and (4) punishment or retribution for wrongdoing. *Id*. at 148, 191 P.3d at 226. A sentence of confinement is reasonable if it appears, at the time of sentencing, that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution *applicable to a given case*." *Toohill*, 103 Idaho at 568, 650 P.2d at 710 (emphasis added). Thus, we review the record in regard to the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982).

The majority disregards most of the salient *facts* of this case. After a perfunctory and rather sterile statement of the facts of the crime, the majority only again references the crime

9

involved here, as opposed to the defendant involved here, with the conclusory statements "Miller has committed very serious crimes," and "Miller put the victims in this case through severe trauma."

I will first set forth the facts relative to the "very serious crimes" committed in this case by Miller. A couple, sleeping in the bedroom of their home in the middle of the night, was awakened. The man standing over them, Miller, was wearing a mask and gloves to conceal his identity. The wife/mother described him as "a horrifying stranger violently pointing a shotgun at me, my husband & baby." He pointed the shotgun at their faces. Their other children slept nearby. As described by the wife:

> Then there was the encounter in our bedroom. It was violent. He was shouting demands at us. He was pointing a gun at our face. He was cursing. I was afraid for my life. I was afraid that he was going to blow our heads off. I didn't know if he had been in my daughter's bedroom. I don't know if he had touched her.

While holding the shotgun to them, Miller asked personal questions regarding employment, bank information and how much money they had in financial accounts. He demanded answers and followed each question with "Don't f---ing lie to me." He told them that they would wait until the financial institutions opened in the morning when they would withdraw money.

Miller told the presentence investigator that he had been unable to buy drugs in Idaho Falls because his dealer accused him of stealing. So he traveled to Pocatello to obtain drugs. He claimed that the individuals with whom he was to meet called him a "narc," which he associated with his 2005 burglary case, and they began chasing him. He stated that he entered the victims' home through the garage, which he described as the last house before the sagebrush. He denied asking for bank information, but admitted asking the victims for money. Miller was in the home for nearly an hour before confronting the victims, during which time he located the shotgun. Inexplicably, at sentencing, Miller stated:

> When I got in the house, I didn't sit there for an hour trying to wait for the bad guys to come through the door or whatever. I just didn't know what I could do. I thought about waking you up and say, "Hey, you know I just snuck in your house because some of these bad guys are after me." You know, I didn't know what to say.

And, I thought if I could find a gun to protect myself, then I could get out of your house. Because I meant no harm to you folks at all. And I was so high and so drugged out, if things got twisted out of my mouth, then they did.

Suffice to say that Miller's statements cannot be squared with his actions.[1]

Ultimately, in an effort to protect his family, the husband/father grabbed the shotgun by the barrel as Miller looked away. He was able to strike Miller and distract him long enough for his wife to escape with their baby. The husband then ran out of the home and alerted his neighbor to get his guns and help. He then re-entered the home after he saw Miller in the garage and rescued their other two children. The neighbor confronted Miller with a pistol and the police were eventually able to subdue and arrest him.

Next, I will review the facts relative to the "severe trauma" Miller put his victims through. According to the wife at the time of sentencing, Miller "changed a happy, go-lucky, daydreamer into a sleepless, untrusting and fearful person." She stated that she has inability to sleep and is afraid to be alone or answer the door. She described the crime as violent and extremely traumatic. She cannot erase the images and feelings from the crime or Miller's "shadow right there, pointing a shotgun at my face, at my husband's face and my baby's face." She stated that Miller changed her life when he "violated the safety, the peace, the security of my home." According to the husband, he is "forever changed." He stated that he cannot sleep and sits up with his wife until she can fall asleep. He takes sleep aids so he can function in society and provide for his family. He consumes caffeine and energy drinks to perform his job. Every noise in the night is a struggle. He sets an alarm in the home, checks the doors, and a couple of times each night checks on the children. He lives in fear. Their eight-year-old daughter has "awful thoughts" about daddy being dead on the floor.

The majority reduces these facts to a couple of conclusory statements. The fact is, as the district court noted, this was not a crime committed against persons known to Miller, no, Miller committed a violent crime against strangers. This was not a crime against persons in a public

---

[1] A court may properly consider a defendant's refusal to acknowledge guilt when evaluating the defendant's rehabilitation potential because acknowledgment of guilt is a critical first step toward rehabilitation. *State v. Stevens*, 146 Idaho 139, 148, 191 P.3d 217, 226 (2008); *State v. Sorrell*, 116 Idaho 966, 969, 783 P.2d 305, 308 (Ct. App. 1989); *State v. Nooner*, 114 Idaho 654, 656, 759 P.2d 945, 947 (Ct. App. 1988); *Lawrence*, 112 Idaho at 157, 730 P.2d at 1077.

setting, no, this was a crime in the sanctity of one's home, at night, on the edge of town, with a baby and children present. This was not a crime of stealth to steal someone's belongings, as violative as that would be, no, this was a crime of violence by a masked man with a shotgun in a couple's bedroom. This was a crime which caused the everlasting loss of something the victims and all of us, individually and as a community, hold most dearly, the sense of security. This Court has, in the past at least, recognized the violence and victimization of armed robbery, in the absence of bloodshed, quoting the district court's "persuasive" reasoning:

> Robbery with the use of a firearm is too serious not only to the victim but to society as a whole to justify excusing even a first offender. To do this, would in effect, license everyone so inclined to commit at least one armed robbery with impunity. The crime is one that involves terror to the victim; being a crime in which the victim is terrorized, it has a potential for serious and long-lasting psychological harm to the victim even in the absence of physical harm. Besides the effect on the victim, the crime of [r]obbery is one of those crimes that destroys the very fabric of society by breeding fear in the community. . . .

*State v. Dusenbery*, 109 Idaho 730, 731, 710 P.2d 640, 641 (Ct. App. 1985).[2]

The majority justifies its arbitrary reduction of the twenty-eight-year determinate portion of Miller's enhanced sentence for burglary and assault with intent to commit robbery based solely on its view of Miller's character. The majority states that "in our view, the court unduly discounted as sentencing considerations, the effect of Miller's mental illness and longstanding substance addiction and his rehabilitation potential." I disagree with the characterization of the district court's analysis and, more importantly, the incorrect myopic "focus" of the majority on only one of the four well-known sentencing objectives.

---

[2] Recently, this Court, in an unpublished decision, affirmed the life sentence with twenty-five years determinate of a defendant for robbery. *State v. Quest*, Docket No. 36569 (Ct. App. April 15, 2010) (unpublished). The case involved the robbery of a jewelry store. Quest used a gun and assaulted and threatened the owner and his son, inflicting some non-life threatening physical injuries. The defendant there was 38 and here 40 years old. The same district judge is involved in both cases. Persistent violator allegations were made in both cases. While there are some dissimilarities in the history and character of the two defendants, there the sentence was affirmed and here, according to the majority, reasonable minds cannot differ as to the excessiveness of Miller's determinate sentence and, additionally, an entire decade's worth of difference in the determinate portion of these two defendants' sentences is warranted. While it can be argued that the determinate sentence in both cases is on the upper end, it raises for me the concern that, as stated by the majority, there appear to be "no definitive parameters to be applied" by the reviewing court.

As noted, in reviewing a sentence we are to focus on the objectives of criminal punishment: (1) protection of society; (2) deterrence of the individual and the public; (3) possibility of rehabilitation; and (4) punishment or retribution for wrongdoing. *Id*. at 148, 191 P.3d at 226. As to the goal of "protection of society," the majority makes one statement and provides no analysis, stating only that: "We agree with the district court's concern for the protection of society." Yet, this expression of agreement with the district court's "concern" for the protection of society is trumped by its focus on its view of the character of the defendant. As to the goal of punishment or retribution, the majority again makes only one statement and provides no analysis, stating: "Miller put the victims in this case through severe trauma, and this is an appropriate case to impose a sentence for the purpose of retribution." Yet, again, this minimal recognition that retribution is an applicable objective in this case is wholly secondary to the majority's focus, which is the character of the defendant. As to deterrence of the individual and the public, the majority says nothing. However, as I have noted, this was a crime against the sanctity of the home and the security of not only the victims, but the community, and deterrence is an applicable objective in this case. Thus, while not so in every case, all four sentencing objectives apply here. However, the majority has chosen, in my view inappropriately, to focus on one. Certainly, one of the objectives may garner more of the focus under the facts of a particular case. A sentence need not serve all the sentencing goals or weigh each one equally. *State v. Dushkin*, 124 Idaho 184, 186, 857 P.2d 663, 665 (Ct. App. 1993).[3] But, importantly, the danger, as exhibited by the majority opinion, is exclusivity of focus on one of the sentencing objectives, largely to the exclusion of the others.

To illustrate, one can compare the focus of the majority in *State v. Helms*, 143 Idaho 79, 137 P.3d 466 (Ct. App. 2006), with the majority's focus in the instant matter. In *Helms*, the defendant's "extraordinary history of criminal and disruptive behavior" was acknowledged by the majority. *Id*. at 82, 137 P.3d at 469. However, the majority there chose to focus on the crime itself. The crime, for which the already incarcerated defendant had been given a determinate life

---

[3]     It should be noted, though, that as a matter of policy, the primary consideration in sentencing must always be the protection of society. *State v. Hunnel*, 125 Idaho 623, 627, 873 P.2d 877, 881 (1994).

sentence, was "throwing toilet water at his guards."[4] *Id*. at 83, 137 P.3d at 470. The majority stated: "Although a defendant's character and criminal history are highly significant factors for the court's consideration in fashioning a sentence, *ultimately the defendant is sentenced for his crime, not for his character*." *Id.* (emphasis added). Here, conversely, the majority minimizes the horrifying, violative, and violent crime committed by Miller in order to shift the focus to Miller's character. In essence, the majority does exactly what it finds the district court at fault for doing. The majority states that the district court "unduly discounted" the character of the defendant. But, in so doing, the majority itself has "unduly discounted" all three other sentencing objectives. In my view, the majority substitutes its view for that of the district court, which is precisely what we are not supposed to do. *Stevens*, 146 Idaho at 148-49, 191 P.3d at 226-27.

Our traditional statement of the abuse of discretion standard of review is that when a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). In general, the first subsection may come into play in a sentence review, for instance, if the sentencing court erroneously believed that a certain sentence was mandatory. The second clause of the second subsection may come into play in a sentence review, for example, if the sentence was below a mandatory minimum or exceeded a statutory maximum. Again, in general, the third subsection may come into play if the sentencing court failed to consider something that it was legally required to do or considered something at sentencing that it was legally prohibited from doing.[5] I believe that it is the first clause of the second subsection which is at issue in an excessive sentence claim. The excessive sentence

---

[4]     I recognize that review of determinate life sentences is, and should be, unique from indeterminate sentencing review. *State v. Eubank*, 114 Idaho 635, 638, 759 P.2d 926, 929 (Ct. App. 1988). However, my point in comparing *Helms* is that the focus of the reviewing court can be determinative of, or a justification for, the result.

[5]     I do not read the majority opinion to say that the district court failed to exercise reason. Rather, it is the reasonableness of the sentence with which the majority takes issue.

standards recited above are intended to assist in determining the outer boundaries of a sentencing court's discretion. As such, if, under any reasonable view of the facts of the case, reasonable minds can differ, then the sentence is not excessive.

The facts of this case, which were fully understood by the district court, support the sentence imposed. The district court's articulation at sentencing addressed all of the sentencing objectives. The district court, as the majority did in *Helms*, properly placed significant weight on the crime itself, noting that the crime committed by Miller was "egregious and reprehensible." "[U]ltimately the defendant is sentenced for his crime, not for his character." *Helms*, 143 Idaho at 83, 137 P.3d at 470. The district court had more than "concern" for the protection of society. The district court noted that this was a defendant on probation at the time of commission of the crime, for a prior crime of invasion of a home.[6] The district court acknowledged that Miller's record prior to 2005 consisted of misdemeanors, but had escalated to felonies and now a violent felony. The district court properly applied the primary consideration in sentencing which must always be the protection of society. *State v. Hunnel*, 125 Idaho 623, 627, 873 P.2d 873, 881 (1994). The district court also considered deterrence, that is, protecting society not just from Miller, but others who might be deterred from invading "a man's castle."

I turn, then, to the remaining sentencing objective, the character of the defendant as it relates to the possibility of rehabilitation. The two specific criticisms of the district court articulated by the majority are that, in its view: (1) "the district court significantly misinterpreted the mental health evaluation;" and (2) "the court unduly discounted as sentencing considerations, the effect of Miller's mental illness and longstanding substance addiction and his rehabilitation potential." The majority does not contend that the district court failed to consider evidence or issues required by law. Instead, the majority simply expresses its disagreement with what it believes to have been the district court's view of the evidence and weight assigned by the district court to Miller's character and rehabilitation potential.

---

[6] The majority also plays down the prior burglaries as simply non-violent breaking into the homes of family and friends. The fact, as recognized by the district court, was that these prior burglaries represented an escalation in conduct from misdemeanors to felonies. More importantly, and also not lost on the district court, was the fact that the instant crimes represented another huge escalation from non-violent to extremely violent crimes, committed against unknown persons.

15

To be clear, the district court was fully aware of Miller's mental health issues and substance abuse. Prior to trial the district court ordered a competency evaluation. The court granted a trial continuance so that defense counsel could pursue mental health issues as they related to specific intent. Indeed, the district court, *on its own motion*, postponed sentencing in order to secure a second evaluation under Idaho Code § 19-2524. In so doing, the district court noted the mental health and substance abuse issues set out in the presentence investigation report and in the competency evaluation. Importantly, the district court made specific reference to this Court's decision in *State v. Durham*, 146 Idaho 364, 369-70, 195 P.3d 723, 728-29 (Ct. App. 2008) and quoted the following from that opinion:

> A district court needs sufficient psychological information before sentencing a defendant, not just for the defendant's sake, but also in order to determine what is best for society. For example, it is not in society's best interests to incarcerate a mentally ill defendant for a substantial period of time if that individual poses no threat when properly diagnosed and treated. However, a seemingly innocuous defendant should not be released on probation if substantial mental defects mean the individual poses a significant threat to society.

Yet, now it is suggested that the district court disregarded the admonition which it quoted.

The majority states that the district court significantly misinterpreted the report which it ordered for sentencing. While the district court did not misinterpret the report, the majority does. It is entirely unclear just how the district court is thought to have misinterpreted the report. For example, the district court is quoted as saying that it was "Miller's choices to abuse illegal substances that have compounded his mood and personality disorder." The majority then states that the report shows that Miller has a "reliably diagnosable mood and personality disorder." The district court did not deny the "mood and personality disorder." The majority then states that the severity of the mood and personality disorder is questionable because of Miller's "pattern of symptom exaggeration" and "due to the compounding effects of his persistent substance abuse." That is exactly what the district court said. The evaluator stated that "based upon his current symptom management and based upon his history Mr. Miller's mental health needs can successfully be managed when they are not exacerbated by substance abuse. Thus, I am not recommending mental health treatment under Idaho Code § 19-2524." The evaluator also stated, however, that Miller would likely benefit from pharmacotherapy during his incarceration. Both the competency evaluation and the sentencing evaluation discuss Miller's

16

need to go back on pharmacotherapy for his bipolar condition. The district court was well aware of that information. In fact, after imposing sentence, the district court specifically *ordered*, "that he receive medication while in prison." The district court did not misinterpret nor misunderstand the evaluations.[7]

In order to fit Miller within the case law which holds that substance *addiction* is a factor to be considered at sentencing,[8] the majority finds that Miller has "longstanding substance addiction." However, both the competency evaluation and the sentencing evaluation carefully diagnose Miller with substance *abuse*. The diagnosis in the competency evaluation is "DSM-IV criteria for Major Depression and Personality Disorder Not Otherwise Specified (NOS) with Antisocial Traits and Substance Abuse (Methamphetamine)." The diagnosis in the sentencing evaluation is "Methamphetamine Abuse v. Dependence." Both evaluations are replete with references to Miller's "substance abuse." Neither evaluator draws any conclusion as to addiction.

In addition, the sentencing evaluator stated that "his most recent criminal behavior in concert with his drug abuse resulted in him being a high risk for harming others and this risk has the possibility of escalating with similar circumstances." Properly relying on these reports, the district court concluded that Miller made the choice to abscond from probation and resume using illegal drugs. Based upon these reports, Miller is not entitled to favorable sentencing consideration because of substance addiction.

Further, the district court agreed that Miller suffered from bipolar disorder but also noted that bipolar people can succeed in society. In this regard, the sentencing evaluator stated that "his history indicates that any psychotic symptoms are likely related to drug use." Thus, everyone recognized that Miller suffers from significant mental health issues and when he chooses to stay away from methamphetamine, he can have compliant periods. However, underlying mental health issues have not been determined to be the cause of his irrational and criminal behavior. His drug use has. The district court correctly interpreted the reports and weighed Miller's mental health issues in fashioning his sentence.

---

[7] If a sentencing court genuinely failed to consider, or significantly misinterpreted, a key piece of evidence at sentencing, it would seem that the proper remedy would be remand and resentence with due consideration to the evidence.

[8] *See Nice*, 103 Idaho at 90, 645 P.2d at 324.

17

The prosecutor recommended a determinate term of twenty-five years. The district court imposed a twenty-eight-year determinate term. In fact, the district court did not articulate the sentence correctly on the day of sentencing. The district court incorrectly treated the sentence enhancement as a separate crime. So, the next day, the district court re-articulated Miller's sentence in his presence on the record. More than twenty-four hours after the emotional sentencing hearing, the district court stated: "My intent yesterday was to have Mr. Miller serve 28 years before being eligible for parole, and that is still my intent." Reasonable minds can differ, under all of the facts of this case, and, thus, this Court may not substitute its view for that of the district court. *Stevens*, 146 Idaho at 148-49, 191 P.3d at 226-27.[9]

Lastly, I am troubled by the majority's application of a multiplier limitation on the enhancement statute. Miller admitted being a persistent violator and, hence, subject to sentence enhancement under I.C. § 19-2514. A second sentence enhancement for use of a firearm during commission of a felony, I.C. § 19-2520, was dismissed. The majority states:

> We also note, however, that the minimum terms of Miller's sentences are nearly three times the statutory maximum term that would be allowed for burglary and nearly twice the maximum term that would be allowed for assault with intent to commit a serious felony but for the persistent violator enhancements, which authorized sentences of up to life imprisonment.

(Footnote omitted.) Thereafter, the majority engages in a review of the two prior felony convictions for burglary, which underlie the enhancement. These prior burglaries are described as simply breaking into two unoccupied homes belonging to family and friends accompanied by extensive methamphetamine use and mental instability.[10] After acknowledging that the prior burglaries qualify Miller as a persistent violator, the majority states that "they were not violent nor exceptionally egregious and do not appear to justify enhancements in this case that multiply Miller's determinate terms nearly two to three times beyond what would otherwise be the

---

[9]    The determinate portion of Miller's sentence is deemed excessive, in part, because the district court should not have dismissed "the possibility of improvements in the treatment of addiction and mental illness which may occur while he is in prison." I do not believe we should direct a sentencing court to speculate in this fashion.

[10]    I am not certain, from the very limited information in the record regarding the two prior burglaries, upon what the majority bases its conclusion regarding "extensive methamphetamine use and mental instability."

maximum allowed by law." Thus, without any citation to authority, the majority, essentially, imposes a multiplier limitation on application of the enhancement statute. Moreover, the majority's analysis would mandate that, prior to application of the sentencing enhancement, the sentencing court must engage in extensive review of the facts and circumstances surrounding the prior felonies (often, as in this case, consisting of very limited information), in order to characterize their level of egregiousness. Application of the persistent violator statute would not so much turn on the fact of persistence, but on the nature of the prior crimes subjecting the defendant to the persistent violator sentence enhancement. The majority's approach has the effect of legislating an evidentiary requirement and a multiplier limitation not found in the statute. I respectfully dissent.